# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS TORRES, on behalf of himself and other persons similarly situated,** | **CIVIL ACTION NO. 2:17-cv-10022** |
| **Plaintiff** | **SECTION "E" (2)** |
| **v.** | |
| **INTELIQUENT, INC. and NEUTRAL TANDEM-LOUISIANA, LLC** | **JUDGE SUSIE MORGAN** |
| **Defendants** | **MAGISTRATE MICHAEL NORTH** |

**TWILIO INC. AND INTELIQUENT, INC.'S MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT, OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

DEFENDANTS' OFFERINGS ............................................................................. 2

SUMMARY OF PLAINTIFF'S ALLEGATIONS .............................................. 3

LAW AND ANALYSIS ....................................................................................... 4

I.     PLAINTIFF'S CLAIM AGAINST INTELIQUENT AND TWILIO SHOULD BE DISMISSED FOR LACK OF STANDING ....................................... 6

    A.    Plaintiff's Alleged Privacy Harm Does Not Constitute "Injury-in-Fact" Because It Is Neither Concrete Nor Particular ...................................... 7

    B.    Plaintiff's Alleged Privacy Harm Is Not Fairly Traceable To The Provider Defendants' Alleged Violation Of The TCPA ....................................... 9

    C.    Plaintiff's Alleged Privacy Harm Is Not Redressable By A Favorable Judicial Decision .................................................................................... 10

II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST INTELIQUENT AND TWILIO ..................................................................................................... 11

    A.    Plaintiff's Conclusory Allegations in Support Of His Claim That Inteliquent And Twilio Violated The TCPA Are Not Facially Plausible ........................................................................................................ 12

    B.    Plaintiff Fails To Allege The Elements Of A TCPA Action ................................................ 14

        1.    Plaintiff fails to allege that Inteliquent or Twilio initiated the text ........... 14

        2.    Plaintiff fails to allege that Inteliquent or Twilio used an ATDS. ............ 16

        3.    Plaintiff fails to allege that consent would be required, and even if it was required, which Defendant had such obligation ...................................... 17

III.    ALTERNATIVELY, PROVIDER DEFENDANTS ARE ENTITLED TO A MORE DEFINITE STATEMENT OF PLAINTIFF AND CLASS'S CLAIMS PURSUANT TO RULE 12(E) .............................................................................................. 20

CONCLUSION .................................................................................................... 22

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... passim

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) .................................................................12

*Beanal v. Freeport-McMoran, Inc.*,
197 F.3d 161 (5th Cir. 1999) .........................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................12

*Creative Choice Home, Inc. v. Historic Restoration, Inc.*,
No. CIV.A. 99-1569, 1999 WL 1009810 (E.D. La. Nov. 5, 1999) ............................13, 15, 17

*Daniel v. Five Stars Loyalty, Inc.*,
No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ................................2

*Duguid v. Facebook, Inc.*,
No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) ....................................2

*Ewing v. SQM US, Inc.*,
No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494 (S.D. Cal. Sept. 29, 2016) ......................10

*Fleming v. Transocean Offshore USA, Inc.*,
No. Civ.A. 04-2740, 2004 WL 2984325 (E.D. La. Dec. 14, 2004) .......................................21

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
143 F.3d 1006 (5th Cir. 1998) .................................................................................6

*In the Matter of the Joint Petition Filed by Dish Network, LLC et al.*,
28 F.C.C. Rcd. 6574 (2013) ..................................................................................15

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
of 1991*, 7 F.C.C. Rcd. 8752 (October 16, 1992) ..............................................15, 20

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 FCC Rcd. 14014 (July 3, 2003) ......................................................................................12

*In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991,*
21 FCC Rcd. 3787 (Apr. 6, 2006)........................................................................................19

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order,*
30 F.C.C. Rcd. 7961 (July 10, 2015) ................................................1, 4, 15, 16, 19

*Kauffman v. CallFire, Inc.,*
141 F. Supp. 3d 1044 (S.D. Cal. 2015)...........................................................................15, 16

*Lincoln v. Case,*
340 F.3d 283 (5th Cir. 2003) ................................................................................................11

*Mendez v. C-Two Group, Inc.,*
No. C-13-5914-EMC (N.D. Cal. Apr. 21, 2014) ...................................................................2

*Meyer v. Portfolio Recovery Associates, LLC,*
707 F.3d 1036 (9th Cir. 2012) .......................................................................................12, 18

*Pinkard v. Wal-Mart Stores, Inc.,*
No. 3:12-cv-02902-CLS, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ...............................20

*Roberts v. PayPal, Inc.,*
621 Fed. App'x 478 (9th Cir. 2015) .....................................................................................20

*Saragusa v. Countrywide,*
No. CV 14-2717, 2016 WL 1059004 (E.D. La. Mar. 17, 2016), *aff'd sub nom.*
*Saragusa v. Countrywide Home Loans, Inc.,* No. 17-30083, 2017 WL
6523391 (5th Cir. Dec. 20, 2017) ........................................................................................17

*Sartin v. EKF Diagnostics, Inc.,*
No. CV 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016)...................................... passim

*Satterfield v. Simon & Schuster, Inc.,*
569 F.3d 946 (9th Cir. 2009) ................................................................................................12

*Saunders v. NCO Fin. Sys.,*
910 F. Supp. 2d 464 (E.D.N.Y. 2012) ..................................................................................20

*Singletary v. Prudential Ins. Co. of Am.*,
 105 F. Supp. 3d 627 (E.D. La. 2015) .................................................................13, 21

*Supply Pro Sorbents, LLC v. Ringcentral, Inc.*,
 No. C 16-02113 JSW, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016) ........................9

*Taylor v. Books A Million, Inc.*,
 296 F.3d 376 (5th Cir. 2002) ............................................................................13, 16

*Van Patten v. Vertical Fitness Grp., LLC*,
 22 F. Supp. 3d 1069 (S.D. Cal. 2014) ..................................................................20

*Weisberg v. Stripe, Inc.*,
 No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ....................2

*Wick v. Twilio Inc.*,
 No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017) .........2, 18, 21

*Who Dat, Inc. v. Rouse's Enterprises, LLC*,
 No. CIV.A. 12-2189, 2013 WL 395477 (E.D. La. Jan. 31, 2013) ....................21, 22

*Wolcott v. Sebelius*,
 635 F.3d 757 (5th Cir. 2011) ............................................................................13, 16

**STATUTES**

Telephone Communications Protection Act (TCPA), 47 U.S.C. § 227 ............................... passim

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(a)(2) .........................................................................4, 18, 19, 23

Chapman and Cutler LLP, *Chapman Client Alert: TCPA Update 2017: The First
 Quarter in Review* 1 (Apr. 17, 2017),
 https://www.chapman.com/media/publication/752_Chapman_TCPA_2017_
 First_Quarter_041717.pdf (providing the 2016 figure) ...........................................1

iv

# INTRODUCTION

Plaintiff Carlos Torres allegedly received a single text message, which he has used to justify a nationwide class action against Inteliquent, Inc. ("Inteliquent") and Twilio Inc. ("Twilio") (collectively, "Provider Defendants"). Inteliquent and Twilio are two Federal Communications Commission ("FCC")-regulated communications service providers. Plaintiff is seeking to transform this alleged *single* text message into a claim involving *multiple* text or voice calls against the Provider Defendants, who at most transmit text messages similar to the way that the U.S. Postal Service transmits letters. Mr. Torres asserts that the single text message he received, the content of which he does not reveal, violated the Telephone Communications Protection Act, 47 U.S.C. § 227 ("TCPA").

Other than vague allegations, the First Amended Class Action Complaint ("FAC") is devoid of factual support. It contains only legal conclusions based on mere recitations of the elements of a TCPA claim and language from FCC orders. Nothing presented by Mr. Torres suggests, let alone demonstrates, how either Inteliquent or Twilio allegedly violated the TCPA.

If there was ever a case that warrants a motion to dismiss, this is it. As current FCC Chairman Pai has noted, class actions under the TCPA have "become the poster child for lawsuit abuse," with the number of cases filed each year booming from 14 in 2008 to 4,860 in 2016.[1] Plaintiffs are able to extract early settlements from many defendants, while those defendants

---

[1] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8073 (2015) (Pai, Comm'r, dissenting); Chapman and Cutler LLP, *Chapman Client Alert: TCPA Update 2017: The First Quarter in Review* 1 (Apr. 17, 2017), https://www.chapman.com/media/publication/752_Chapman_TCPA_2017_First_Quarter _041717.pdf (providing the 2016 figure).

fighting back are faced with a steep legal tab, irrespective of outcome. Responding accordingly, federal courts are increasingly dismissing meritless TCPA claims at the motion-to-dismiss stage.[2]

For the reasons set forth below, the Provider Defendants request that this Court grant their joint motion to dismiss the FAC for lack of standing and for failure to state a claim. Alternatively, they request that the Court grant its motion for a more definitive statement and require Mr. Torres to provide a more definitive statement in support of his claims.

## DEFENDANTS' OFFERINGS

The FAC lumps together the Provider Defendants (Inteliquent and Twilio) and Premier Automotive, LLC ("Premier Automotive"), simply referring to the collective "Defendants." No distinction is made between the three defendants throughout the pleading, and at no point does Plaintiff describe with any specificity the conduct of each defendant that allegedly violated the TCPA. Plaintiff's lump pleading muddles bright-line differences that are fundamental to pleading TCPA claims and determining potential TCPA liability. Indeed, under the TCPA's framework, as elaborated by the FCC, neither Inteliquent nor Twilio could be found to have violated the TCPA with regard to the one text message Plaintiff claims he received from "Troy Duhon from Toyota of New Orleans." FAC ¶ 26.

Inteliquent and Twilio are both service providers regulated by the FCC. Inteliquent is a regulated telecommunications carrier that provides services such as local transit, long distance, and switched access services, using an all-Internet Protocol network. Inteliquent was a public

---

[2] *See, e.g.*, *Wick v. Twilio Inc.,* No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017); *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016); *Duguid v. Facebook, Inc.,* No. 15-CV-00985-JST, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015); *Mendez v. C-Two Group, Inc.*, No. C-13-5914-EMC (N.D. Cal. Apr. 21, 2014).

company until February 2017. Twilio is a public company and a regulated non-Interconnected Voice over Internet Protocol ("VoIP") provider that offers cloud-based communications offerings globally.

As FCC-regulated service providers, the Provider Defendants transmit the communications initiated by their subscribers. That is why regulated service providers are sometimes referred to as "dumb pipes." Neither Provider Defendant controls the content of the text messages or voice calls that they transmit on behalf of their subscribers. These communications are similar to traditional telephone calls, in that the subscriber (business or consumer) decides who to call and what to say, and the phone company transmits the call from the subscriber to the call recipient.

Premier Automotive is an automotive vehicle dealership group with over 21 stores across five states nationwide.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's bare-bones FAC fails to set forth allegations sufficient to establish Article III standing or to state a claim for a TCPA violation. Even if Mr. Torres could establish the veracity of the assertions in the FAC, the allegations fail to demonstrate a violation of his statutory rights.

Plaintiff asserts that "Defendants" violated the TCPA when he received "a text message call from an SMS-enabled land-line phone number, 504-608-2546." FAC ¶ 24. Yet he never discloses the actual content of the text message. He simply insists that the message did not include a mechanism for opting-out of future texts, FAC ¶ 25; that it was not addressed to Plaintiff by name, FAC ¶ 32; that it did not clearly identify any of the defendants, FAC ¶ 30; and that the sender was "Troy Duhon from Toyota of New Orleans," FAC ¶ 26. Based only "[u]pon information and belief," Plaintiff alleges that Troy Duhon did not personally initiate the text message. FAC ¶ 27.

Beyond this, Plaintiff simply recites the statutory elements of a TCPA claim.  He alleges that all Defendants:

- "created and/or controlled the content of the call, initiated the call, took steps necessary to physically place the call and/or were so involved in placing the call at issue that they could be considered to have initiated it" (FAC ¶ 29; *see* 47 U.S.C. § 227(b)(1)(A); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order*, 30 F.C.C. Rcd. 7961, 7978–82 ¶ 26–32 (July 10, 2015) ("2015 FCC Order");

- used an automatic telephone dialing system ("ATDS") to make the call (FAC ¶ 28; *see* 47 U.S.C. § 227(a)(1)); and

- prior to initiating the call, which was "an advertisement," did not obtain Plaintiff's "prior express written consent" (FAC ¶¶ 31, 34; *see* 47 C.F.R. § 64.1200(a)(2)).

The foregoing—the elements of a TCPA claim for an advertising text—are alleged without any additional factual support.  Mr. Torres provides no further details, such as the alleged relationship (if any) between the Provider Defendants and Premier Automotive, or how he determined that the single text message was sent using an ATDS.  Mere recitation of the elements for a TCPA cause of action is insufficient to state a claim in this district and elsewhere.

## LAW AND ANALYSIS

Provider Defendants request that this Court grant their joint motion to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  First, Plaintiff has not alleged a judicially cognizable injury for Article III standing.  His claim that "his right to privacy" was "adversely affected" by Defendants' text is the only harm that Plaintiff alleges he personally suffered, and, without more factual support, this does not amount to a concrete injury

for purposes of the injury-in-fact standing requirement. Furthermore, because a court cannot reasonably infer from Plaintiff's factual allegations that Defendants' initiation of the text and use of an ATDS was what specifically caused Plaintiff's alleged privacy harm, Plaintiff also has not shown that his alleged injury is fairly traceable to Defendants' alleged TCPA violation or that a decision in his favor would remedy this alleged injury. Accordingly, Plaintiff's FAC should be dismissed for lack of Article III standing.

Plaintiff's factual allegations also fall far short of what is required to state a claim for relief. The FAC provides few alleged facts, and none of them, accepted as true, establish the elements of a TCPA claim. And the rest of the allegations in the FAC are threadbare recitals of these elements, couched as factual conclusions. Plaintiff should not be permitted to seek a wide-ranging class action against Inteliquent and Twilio based on allegations of a single text for which there is no pleaded content or detail.

The allegations in the FAC also fail as a matter of law. A TCPA claim has three elements: (1) the defendant *made* or *initiated* the call or text at issue—mere transmission is not actionable; (2) the defendant used an ATDS to make or initiate the call or text; and (3) plaintiff did not consent to the receive the call or text. Plaintiff has not pleaded, and cannot, sufficiently plead, any of these requirements.

The FCC has made clear that communications service providers like Inteliquent and Twilio do not "make" or "initiate" communications when subscribers use their services to send calls or texts; the end-users do. The end-user "initiates" a text message (or messages) by creating it and then "hitting" the "send" button. Inteliquent and Twilio simply transmit the messages that the end-user initiates. Because Plaintiff has failed to allege a plausible finding of liability against Inteliquent or Twilio, he has failed to state a claim for a violation of the TCPA, and his FAC should

be dismissed with prejudice.

Alternatively, Provider Defendants request that this Court grant their joint motion for a more definite statement under Rule 12(e). At a minimum, Plaintiff should be required to set forth more detailed factual allegations to enable Provider Defendants to prepare an appropriate response to Plaintiff's claim.

## I. PLAINTIFF'S CLAIMS AGAINST INTELIQUENT AND TWILIO SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiff's FAC should be dismissed for lack of Article III standing because Plaintiff has failed to allege any judicially cognizable injuries that are traceable to Provider Defendants and that can be remedied by a ruling in his favor. A motion to dismiss for lack of standing, which challenges the court's subject matter jurisdiction, is governed by Rule 12(b)(1). *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 3598297, at *2 (E.D. La. July 5, 2016). A district court must dismiss on this ground when it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).

Article III standing consists of three elements: "(1) the plaintiff must have suffered an 'injury-in-fact,' which is an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent'; (2) the injury must be 'fairly traceable' to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision." *Sartin*, 2016 WL 3598297, at *2 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To withstand dismissal for lack of standing at the pleading stage, a plaintiff must provide at least "general factual allegations of injury." *Id.* (quoting *Lujan*, 504 U.S. at 561). These factual allegations must be specific enough that a court could "reasonably infer what specific injury, if

any, [the plaintiff] sustained through defendants' alleged statutory violations." *Id.*

Here, Plaintiff only alleges that he personally suffered one harm: "Defendants' intrusive text message adversely affected [his] right to privacy." FAC ¶ 35.[3]  Because this allegation does not meet any of the three elements required for Article III standing, the FAC must be dismissed.

### A. Plaintiff's Alleged Privacy Harm Does Not Constitute "Injury-in-Fact" Because It Is Neither Concrete Nor Particular

Because Plaintiff's allegation that his receipt of the text message "adversely impacted" his "right[] to privacy" is neither a "concrete" nor "particular" injury, it does not qualify as an "injury-in-fact" for Article III standing.  "A 'concrete' injury is an injury that actually exists, meaning that it is real and not abstract." *Sartin*, 2016 WL 3598297, at *2 (quoting *Spokeo*, 136 S. Ct. at 1548).

First, because Plaintiff's allegation that "Defendants' intrusive text message adversely affected Plaintiffs right to privacy" is not a "concrete" injury, Plaintiff fails to satisfy Article III standing on this basis alone.  FAC ¶ 35.  Notably, unlike his other allegations (see footnote 3), Plaintiff does not even claim that his "right to privacy" was harmed or injured by the text—he only states that it was "adversely affected."  Moreover, Plaintiff provides only this single sentence, without any additional allegations in support.  Without more, Plaintiff's allegations that his "right to privacy" was "adversely affected" amounts to, at most, an "abstract" injury, as opposed to a "real" one. *Sartin*, 2016 WL 3598297, at *2 (quoting *Spokeo*, 136 S. Ct. at 1548).  By failing to allege sufficiently specific facts to allow a court to "reasonably infer what specific injury, if any,

---

[3] Plaintiff may point to mentions of harm elsewhere in the FAC and claim that they serve as the basis for standing. *See* FAC ¶¶ 6, 22–23, 50.  But these allegations state that "Plaintiff and the Class" suffered these harms.  By contrast, the only harm enumerated in the "Facts Specific to Plaintiff Torres" section is that "Defendants' intrusive text message adversely affected Plaintiffs right to privacy." FAC ¶ 35.  For this reason, Plaintiff's allegation that the "intrusive text message adversely affected Plaintiffs right to privacy," FAC ¶ 35, is the only harm that Mr. Torres—as opposed to purported class members—claims to have suffered.

[the plaintiff] sustained through defendants' alleged statutory violations," Plaintiff has not shown that he suffered a concrete injury, and therefore lacks Article III standing. *Id.* at *3.

Additionally, to pass muster under Article III, an injury must be "particularized." "A 'particularized' injury is an injury that 'affect[s] the plaintiff in a personal and individual way.'" *Id.* at *2 (quoting *Spokeo*, 136 S. Ct. at 1548).

Although Plaintiff also relies on alleged class harms and harms to third-party consumers to sue, FAC ¶¶ 6, 22–23, 50, these are not "particularized" injuries for purposes of Article III. First, Plaintiffs' allegations that the class suffered various harms do not "affect[] the plaintiff in a personal and individual way," and thus they fail to meet the "particularized" injury requirement. *See Sartin*, 2016 WL 3598297, at *2 (quoting *Spokeo*, 136 S. Ct. at 1548). If Plaintiff has suffered no harm, any injury to the putative class is irrelevant.

Second, Plaintiff's allegation that he has been harmed because apparently *other* "*consumers* frequently have to pay their wireless providers for the receipt of such unsolicited text message calls" fails for the same reason. FAC ¶ 6, 22 (emphasis added). Again, injuries to third parties cannot constitute an injury-in-fact for purposes of the Article III standing inquiry. *See, e.g.*, *Sartin*, 2016 WL 3598297, at *2 (requiring that "the *plaintiff* must have suffered an 'injury-in-fact'" to establish Article III standing) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added)). The alleged financial harm to other consumers thus does not give Plaintiff standing to sue. *See, e.g.*, *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016) (holding that the plaintiff did not adequately allege an Article III injury because, "[a]lthough these facts may generally be true of unsolicited [phone calls], it is not clear how Plaintiff alleges [she] specifically suffered these particular harms"). Because Plaintiff has failed to allege an injury that is both concrete and particularized,

he has not sustain his burden for standing, and the FAC should be dismissed.

**B.     Plaintiff's Alleged Privacy Harm Is Not Fairly Traceable To The Provider Defendants' Alleged Violation Of The TCPA**

Plaintiff also lacks standing to sue because he has not—and cannot—adequately show that his alleged privacy injury is fairly traceable to Provider Defendants' alleged violation of the TCPA.  For purposes of Article III standing, an alleged harm must be "'fairly traceable' to the challenged conduct of the defendant."  *Sartin*, 2016 WL 3598297, at *2 (quoting *Lujan*, 504 U.S. at 560).  A TCPA claim requires a showing that:  (1) the defendant initiated a call to a cellular telephone; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

Plaintiff's FAC must be dismissed because he has not even provided "general factual allegations" to support the inference that his privacy injury is "fairly traceable" to the Provider Defendants' alleged TCPA violation.  *See Sartin*, 2016 WL 3598297, at *3 (quoting *Lujan*, 504 U.S. at 561).  First, Plaintiff's factual allegations do not support *any* link between Provider Defendants and the text message, let alone a causal connection between Provider Defendants' alleged initiation of the text and Plaintiff's alleged privacy harm.  Plaintiff only indicates that he received the text from the number 504-608-2546 and that the sender was identified in the text as "Troy Duhon from Toyota of New Orleans."  FAC ¶¶ 24, 26.  Moreover, Plaintiff makes no distinction between the alleged conduct of the three Defendants in the FAC, making it impossible to trace Plaintiff's alleged privacy injury to any specific conduct of Defendants.  Because Plaintiff's allegations in the FAC are not enough to "reasonably infer what specific injury, if any, [the plaintiff] sustained through defendants' alleged statutory violations," *Sartin*, 2016 WL 3598297, at *3, Plaintiff again has not sustained his burden, and the Court must dismiss the FAC for lack of standing.

Plaintiff also does not adequately allege that Defendants' use of an ATDS caused his privacy harm, and he thus fails to establish Article III for a wholly separate reason. *See, e.g.*, *Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016) (holding that the plaintiff failed to establish Article III standing because he could not allege that the defendants' use of an ATDS to dial his number caused him to incur any injury that he would not have incurred had defendants manually dialed his number). Plaintiff simply claims that "Defendants' intrusive text message adversely affected Plaintiffs right to privacy." FAC ¶ 35. He does not indicate that the Provider Defendants used an ATDS at all in the FAC, let alone that the Provider Defendants' use of it caused him the alleged privacy injury. Because Plaintiff's alleged privacy harm is not "fairly traceable" to Provider Defendants' alleged conduct, Plaintiff lacks Article III standing, and the FAC should be dismissed.

### C.    Plaintiff's Alleged Privacy Harm Is Not Redressable By A Favorable Judicial Decision

Without an injury-in-fact and a causal link between Plaintiff's alleged privacy harm and Provider Defendants' conduct, Plaintiff necessarily has not satisfied Article III's redressability requirement. To sufficiently plead redressability, a plaintiff must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (quoting *United States v. Hays*, 515 U.S. 737, 742 (1995)).

Here, Plaintiff requests a judgment in favor of Plaintiff and the proposed class for statutory damages; an order declaring that Defendants' actions violate the TCPA; a declaratory judgment that Defendants' equipment constitutes an ATDS; an injunction "requiring Defendants to cease all unsolicited text message activities"; and an order requiring disgorgement and an award to Plaintiff and the class for costs and expenses. FAC, at pp. 11–12. Because Plaintiff's allegations do not

create a reasonable inference that Provider Defendants' alleged TCPA violation caused him a cognizable injury, there would be nothing to remedy by granting this relief. Accordingly, this case should be dismissed for lack of Article III standing.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST INTELIQUENT AND TWILIO

The Court should dismiss the FAC under Rule 12(b)(6) because Plaintiff has failed to state a claim against Provider Defendants under the TCPA. The TCPA makes it "unlawful for any person . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The definition of "call" has been interpreted as including text messages pursuant to an FCC order. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). With regard to the Provider Defendants, however, Mr. Torres fails to meet his burden and his FAC should be dismissed.

Not every unwarranted call or text is actionable under the TCPA. A plaintiff must prove that: (1) the defendant "ma[d]e" a call to a cellular telephone; (2) using an automated telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A); *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).[4]

Plaintiff's offering of conclusory allegations, devoid of factual support, are insufficient to state even a plausible TCPA claim against Provider Defendants. Plaintiff also fails to allege any

---

[4] Except for an order granting a motion to dismiss a claim of an alleged regulatory violation under the TCPA, which is not claimed here, *see Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 836 (E.D. La. 2012), neither this Court nor the Fifth Circuit has discussed the elements of a TCPA claim involving a text message.

facts in support of the three elements required to establish a TCPA cause of action. Accordingly, this Court should grant Provider Defendants' motion to dismiss.

### A. Plaintiff's Conclusory Allegations In Support Of His Claim That Inteliquent And Twilio Violated The TCPA Are Not Facially Plausible

Plaintiff's conclusory allegations are not enough to state a claim for a TCPA violation that is plausible on its face, and thus the FAC should be dismissed. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations must be examined to ensure that they are "enough to raise a right to relief above the speculative level." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Nor do "conclusory allegations or legal conclusions masquerading as factual conclusions." *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *S. Christian Leadership Conference v. Supreme Court of State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

"Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. A corollary: legal conclusions 'must be supported by factual allegations.'" *Singletary v. Prudential Ins. Co. of Am.*, 105 F. Supp. 3d 627, 633–34 (E.D. La. 2015) (citing and quoting *Iqbal*, 556 U.S. at 678–79) (citations omitted). In sum, "[i]f the complaint does not set forth allegations regarding a necessary element for relief and conclusory allegations or legal conclusions are set forth instead of factual conclusions, a 12(b)(6) dismissal is

proper." *Creative Choice Home, Inc. v. Historic Restoration, Inc.*, No. CIV.A. 99-1569, 1999 WL 1009810, at *1 (E.D. La. Nov. 5, 1999) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

The FAC falls far short of the facial plausibility standard set forth in *Twombly* and *Iqbal*, and thus fails to state a claim upon which relief can be granted. As explained in *Singletary*, "the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth." 105 F. Supp. 3d at 633–34 (citing *Iqbal*, 556 U.S. at 678–79). Here, a vast majority of the allegations in the FAC are conclusory, and thus are not entitled to an assumption of truth. *Id.* Stripped of its conclusory statements, the FAC boils down to the following:

- A boilerplate description of parties, FAC ¶¶ 8–11; *see*, *e.g.*, FAC ¶ 9 ("Defendant Inteliquent, Inc. is an Illinois-based for-profit corporation. Defendant conducts business in Louisiana and throughout the United States.").[5]

- "Defendants sent a text message call from an SMS-enabled land-line phone number, 504-608-2546, to Plaintiffs telephone number." FAC ¶ 24. "[S]oftware and/or hardware products or services [was] used by Defendants to send the text message call through a land-line phone number . . . ." FAC ¶ 28.

- "The sender is identified in the text message call at issue as 'Troy Duhon from Toyota of New Orleans.' Upon information and belief, Troy Duhon did not personally initiate the call at issue." FAC ¶¶ 26–27.

- "None of the defendants named in this suit were clearly identified in the call at issue." FAC ¶ 30. "The call was not addressed to Plaintiff by name." FAC ¶ 31.

- Defendants sent the texts "[i]n an effort to solicit more customers," FAC ¶14; FAC ¶¶ 1, 45, and "to market their services," FAC ¶ 20.

- "The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have sent promotional text messages to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records." FAC ¶ 38; FAC ¶¶ 17, 19.

---

[5] Although it is not determinative for this motion, Inteliquent is a *Delaware*-based corporation, not "Illinois-based."

- These texts were "the same (or substantially the same)," FAC ¶¶ 19, 41, and "were exclusively made by Defendants," FAC ¶ 19.

- Defendants caused a number of alleged harms, listed more fully at FAC ¶¶ 6, 22–23, 35, 50.

Plaintiff's TCPA claim is not plausible on its face because the foregoing factual allegations, accepted as true, do not create "a reasonable inference" that the Provider Defendants are "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Indeed, no conduct specific to either Provider Defendant is discussed at all. The foregoing list makes apparent that the FAC does not provide the minimum factual matter necessary to support any of the three required elements of a TCPA claim.

### B. Plaintiff Fails To Allege The Elements Of A TCPA Action

As to the specific elements of a TCPA claim, Plaintiff pleads no factual support to suggest that Twilio and Inteliquent made the text that Plaintiff received. Second, no factual support has been provided that suggests that an ATDS was utilized. Third, because Plaintiff has not disclosed the content of the text, he has not shown that that "prior express written consent," *see, e.g.*, FAC ¶¶ 45, 48, or any consent at all, would be required. Accordingly, Plaintiff's claims should be dismissed for failure to state a claim. *See Creative Choice Home*, 1999 WL 1009810, at *1 (citing *Blackburn*, 42 F.3d at 931) ("If the complaint does not set forth allegations regarding a necessary element for relief . . . , a 12(b)(6) dismissal is proper.").

### 1. Plaintiff fails to allege that Inteliquent or Twilio initiated the text

Under the first element of a TCPA claim, the defendant must have "ma[d]e" a call to a cellular telephone. 47 U.S.C. § 227(b)(1)(A). Since the TCPA was enacted, the FCC has emphasized that carriers are not the intended subjects of the statute. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8776 n.83 (1992) ("1992 FCC Order"). "[U]sers of the services, not the carriers providing the services, would

be held liable, consistent with Congress' policy that carriers not be held responsible for the content of messages transmitted through the network." *Id.*; *see also Kauffman v. CallFire, Inc.,* 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015).

The FCC has since confirmed that, like traditional carriers, companies providing cloud services that transmit others' text messages generally do not "make" calls within the meaning of the TCPA and are therefore are not liable for alleged TCPA violations. *See* 2015 FCC Order, 30 FCC Rcd. 7961, 7980–81 ¶¶ 29–30; *In the Matter of the Joint Petition Filed by Dish Network, LLC et al.*, 28 F.C.C. Rcd. 6574, 6583 ¶¶ 25–27 (2013); *CallFire*, 141 F. Supp. 3d at 1047. Such a company is exempt from TCPA liability unless it is "so involved in placing the call as to be deemed to have initiated it." *CallFire*, 141 F. Supp. 3d at 1047 (quoting 2015 FCC Order, 30 FCC Rcd. at 7980–81, ¶ 30).

Here, Plaintiff does not plead a single factual allegation linking Inteliquent or Twilio to Plaintiff's receipt of the text, let alone an allegation that they initiated the text at issue. Instead, nearly all references to the Provider Defendants' alleged involvement with text in the FAC are "legal conclusions masquerading as factual conclusions." *Taylor*, 296 F.3d at 378 (quoting *S. Christian*, 252 F.3d at 786); *see, e.g.*, FAC ¶ 17 ("Specifically, Defendants initiated or took steps necessary to physically place such text message advertising calls using an automated telephone dialing system and/or were so involved in placing the texts as to be deemed to have initiated them."). This, without more, is not enough to survive to support a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Because Plaintiff has not alleged that Provider Defendants are in any way linked to the text that Plaintiff received, the FAC has not provided enough factual matter "to raise a right to relief

above the speculative level." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). Accordingly, Plaintiff has failed to state a claim that is plausible on its face, and Provider Defendants' motion to dismiss under Rule 12(b)(6) should be granted.

### 2. Plaintiff fails to allege that Inteliquent or Twilio used an ATDS

A person or entity can only be liable for violating the TCPA with a call or text if it is made using "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

A plaintiff fails to state a claim for relief under the TCPA where she alleges "in conclusory fashion" that the defendant used an ATDS to make the calls at issue. *See Saragusa v. Countrywide*, No. CV 14-2717, 2016 WL 1059004, at *3 (E.D. La. Mar. 17, 2016), *aff'd sub nom. Saragusa v. Countrywide Home Loans, Inc.*, No. 17-30083, 2017 WL 6523391 (5th Cir. Dec. 20, 2017). In *Saragusa*, the court granted the defendant's motion to dismiss under Rule 12(b)(6) on this basis, ruling that plaintiff had failed to sufficiently allege the elements of a TCPA claim. *Id.* With allegations made only "in conclusory fashion," the court "[could not] reasonably infer from the[] facts that Bank of America randomly generated Saragusa's cellular and home phone numbers with an ATDS, rather than deliberately dialed the numbers that she provided to the company." *Id.*

Much like in *Saragusa*, Plaintiff Torres has only alleged "in conclusory fashion" that Defendants used an ATDS to make the alleged text at issue and therefore fails to sufficiently allege the elements of a TCPA claim. *Id.* While Plaintiff repeats over and over the statutory definition of an ATDS and the associated FCC interpretations, FAC ¶¶ 14, 17–18, 28, 46–48, both *Saragusa* and *Iqbal* make clear that this is not enough, *see Saragusa*, 2016 WL 1059004, at *3; *Iqbal*, 556 U.S. at 678 (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice" to survive a motion to dismiss). Because the FAC does "not set forth allegations regarding a necessary element for relief," "12(b)(6) dismissal is proper." *Creative Choice Home*, 1999 WL 1009810, at *1 (citing *Blackburn*, 42 F.3d at 931).

### 3. Plaintiff fails to allege that consent would be required, and even if it was required, which Defendant had such obligation

Because Plaintiff does not disclose the content of the alleged text, Plaintiff fails to allege that Provider Defendants had any obligation to obtain his consent regarding that text. Merely stating that he "did not provide prior express written consent" is not enough. FAC ¶ 34. But even assuming *arguendo* that consent was required, Plaintiff does not properly plead that Provider Defendants failed to obtain it. The FAC is devoid of details regarding either the text or any interactions between Plaintiff and any Defendant prior to or after the alleged message. The content and details surrounding this single text message—which are absent entirely from the FAC—may very well show that Plaintiff explicitly or implicitly consented to receiving this message.

In many but by no means all instances the *initiator* of a text message must obtain a form of consent from recipient. *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The content of the message is a determinative factor of what type of consent, if any, is required. *See Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017). Here, Mr. Torres has not provided the content of the text message, and he claims "on information and belief" that the only person identified in the text message, Troy Duhon, did not personally initiate the text. As a result, there is no way to determine whether or what type of consent the TCPA requires for the message Mr. Torres claims he received.

As a general rule, a text message that "includes or introduces an advertisement or constitutes telemarketing" requires "prior express written consent" from the recipient. 47 C.F.R.

§ 64.1200(a)(2).[6]  By contrast, "non-telemarketing and non-advertising calls" directed to wireless phones only require prior express consent, which can be given verbally or even by the recipient giving her phone number to the person initiating the call.  *See* 2015 FCC Order, 30 F.C.C. Rcd. 7961, 7991–92 ¶ 52.  Accordingly, whether the content of a text message constitutes an "advertisement" under the FCC's regulation requires a legal conclusion.  Moreover, other types of texts are exempt from the consent requirement altogether.  For example, no prior consent is required for texts sent in connection with money transfers.  *See* 2015 FCC Order, 30 FCC Rcd. 7961, 8025–26 ¶ 133.

Here, Plaintiff has not alleged factual matter about the content of the message that suggests that prior express written consent would even be required.  For all we know, the message could be about a car payment, which would require no consent from the Plaintiff and preclude relief under the TCPA.  *See id.* (exempting texts sent in connection with money transfers from the consent requirement); *see also In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006) (explaining that messages "whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements").

But even assuming *arguendo* that prior express written consent was required, the FAC does not contain factual allegations suggesting that Provider Defendants—as opposed to Premier Automotive or some other third party—had an obligation to obtain the consent.  The content and circumstances surrounding the text are missing entirely from the FAC and may show that Plaintiff

---

[6] An advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services," 47 C.F.R. § 64.1200(f)(1), and telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," *id.* § 64.1200(f)(12).

explicitly or implicitly consented to receiving the text, or that someone other than the Provider Defendants had the obligation to obtain the consent.

Plaintiff could have released his telephone number through an inquiry into a car purchase or a business card raffle. The FCC has stated in no uncertain terms that "persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See* 1992 FCC Order, 7 FCC Rcd. 8752, 8769 ¶ 31.[7] If Plaintiff voluntarily provided his number, as a matter of law he would have expressly consented to be contacted.

Yet, Plaintiff provides no factual support for his conclusory allegation that Provider Defendants were obligated to, but did not, obtain his consent. The FAC provides scant information about the text content or Plaintiff's relationships or interactions with the Provider Defendants, Premier Automotive, or the lack thereof. Plaintiff does not allege which Defendant sent the text message nor even how he knew that Provider Defendants allegedly transmitted the message to him. The only detail is that the message was from "Troy Duhon," but "upon information and belief," he did not personally send it. FAC ¶¶ 26–27.

Instead, Plaintiff just repeats the legal conclusion that Defendants did not obtain prior express written consent over and over in the FAC. FAC ¶¶ 3, 5, 14, 20, 34, 36, 45, 48. Such

---

[7] *See also Roberts v. PayPal, Inc.*, 621 Fed. App'x 478, 479 (9th Cir. 2015) (affirming conclusion that the plaintiff expressly consented to receiving texts from PayPal by providing his cellular number while accessing the PayPal website); *Saunders v. NCO Fin. Sys.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. 2012) ("[T]he authorities are almost unanimous that voluntarily furnishing a cell phone number to a vendor or other contractual counterparty constitutes express consent."); *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) (finding that plaintiff "consented to receiving the texts at issue when he provided his phone number upon joining the gym"); *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 WL 5511039, at *5 (N.D. Ala. Nov. 9, 2012) (stating that the plaintiff's providing her telephone number was "clear and unmistakable consent to be contacted at that number" and "[t]o hold otherwise would contradict the overwhelming weight of social practice").

conclusory allegations are "not entitled to the assumption of truth." *Singletary*, 105 F. Supp. 3d at 633–34 (E.D. La. 2015) (citing *Iqbal*, 556 U.S. at 678–79). "Plausibility requires pleading facts as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action." *Wick*, 2016 WL 6460316, at *1 (quoting *Somers v. Apple Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotations omitted)). Thus, Plaintiff's allegations fall short of the pleading standard with respect to the third element as well, and Plaintiff's FAC should be dismissed.

## III. ALTERNATIVELY, PROVIDER DEFENDANTS ARE ENTITLED TO A MORE DEFINITE STATEMENT OF PLAINTIFF AND CLASS'S CLAIMS PURSUANT TO RULE 12(E)

Rule 12(e) provides that, "if a pleading is 'so vague or ambiguous that the [opposing] party cannot reasonably prepare a response,' the opposing party may move for a more definite statement of that pleading." *Who Dat, Inc. v. Rouse's Enterprises, LLC*, No. CIV.A. 12-2189, 2013 WL 395477, at *3 (E.D. La. Jan. 31, 2013) (quoting Fed. R. Civ. P. 12(e)). District courts maintain considerable discretion in deciding whether to grant a Rule 12(e) motion. *Fleming v. Transocean Offshore USA, Inc.*, No. Civ.A. 04-2740, 2004 WL 2984325, at *2 (E.D. La. Dec. 14, 2004) (citing *Newcourt Leasing Corp. v. Regional Bio-Clinical Lab, Inc.*, No. Civ.A. 99-2626, 2000 WL 134700, at *1 (E.D. La. Feb. 1, 2000)).

In the Fifth Circuit, courts have recognized that a Rule 12(e) motion may be appropriate if the complaint "fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

In the event that Provider Defendants' motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are denied, Provider Defendants request that the Court order Plaintiff to set forth more detailed factual allegations and specify his cause of action and bases thereof, allowing Provider Defendants to prepare an appropriate response to Plaintiff's claim. The allegations in the FAC are

both vague and ambiguous, such that Provider Defendants lack "notice of the circumstances which give rise to the claim." *Beanal*, 197 F.3d at 164; *see also Who Dat*, 2013 WL 395477, at *4 (citing Fed. R. Civ. P. 12(e)) (requiring that a pleader provide "at a minimum, enough specificity or actual particularity to give . . . fair notice") (internal quotations omitted). For example, the allegations never once reference a defendant specifically. All allegations instead refer only to the collective "Defendants," despite the fact that Defendants (a telecommunications carrier, a non-Interconnected VoIP provider, and a car dealership group) would necessarily play very different roles in a TCPA claim.

Moreover, Plaintiff has failed to provide "sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal*, 197 F.3d at 164. The little factual matter that Plaintiff has provided does not support any of the elements of a TCPA action. *See* Part II.

Defendants therefore seek clarifications and additional information on all of the factual deficiencies discussed in this memorandum, including, but not limited to:

- The content of the text message at issue;

- The circumstances of the Plaintiff's receipt of the text message;

- The alleged relationship (if any) between each Defendant and that text message;

- Any information in support of claim that an ATDS or an "artificial or prerecorded voice" was allegedly used to send the text;

- Any information in support of claim that an "artificial or prerecorded voice" can be used to send a text message;

- Any information in support of claim that Plaintiff's consent was required (and if so by which Defendant) but not obtained;

- Support for the contention that the text message did not include an automated opt-out mechanism;

- Support for the contention that the text was an advertisement;

- Support for the contention that Inteliquent and Twilio were aware that the message was being made on a widespread basis;

- Support for the contention that Plaintiff's right of privacy was adversely affected;

- An enumeration of the factual allegations as to each defendant;

- The actions of Inteliquent that allegedly violate the TCPA;

- The actions of Twilio that allegedly violated the TCPA; and

- Any basis for a private right of action arising from the TCPA for an alleged violation of 47 C.F.R. § 64.1200(b)(l) & (3).

Without the requested information, Provider Defendants cannot adequately prepare a response to Plaintiff's TCPA claim. Thus, Provider Defendants request that the Court grant their joint Motion for a More Definite Statement under Rule 12(e).

## CONCLUSION

For the foregoing reasons, Inteliquent and Twilio respectfully request that the Court grant with prejudice this Motion to Dismiss Plaintiff's Amended Complaint, or alternatively, grant this Motion for a More Definitive Statement.

Respectfully submitted,

*s/ Charles F. Seemann III*

Charles F. Seemann III (#23933)
charles.seemann@jacksonlewis.com
Kelly Dugas Moscona (#31139)
kelly.moscona@jacksonlewis.com
Juan C. Obregon (#35273)
juan.obregon@jacksonlewis.com
**JACKSON LEWIS P.C.**
650 Poydras Street, Suite 1900
New Orleans, Louisiana  70130
Telephone:      (504) 208-1755
Facsimile:      (504) 208-1759

*Of Counsel (Moving Defendants)*
Michael B. Hazzard
**JONES DAY**
51 Louisiana Ave., N.W.
Washington, D.C.  20001-2113
Telephone:      (202) 879-5439
Facsimile:      (202) 626-1700

**COUNSEL FOR TWILIO INC. and
INTELIQUENT, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

*s/ Charles F. Seemann III*
Charles F. Seemann III

4817-8863-0618, v. 1