UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS TORRES,** on behalf of himself and other persons similarly situated, | CIVIL ACTION NO. 17-10022 |
| Plaintiff, | JUDGE SUSIE MORGAN |
| v. | |
| **INTELIQUENT, INC., ET AL.** | MAG. JUDGE MICHAEL NORTH |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PREMIER AUTOMOTIVE, LLC'S MOTION TO DISMISS AND JOINDER IN THE MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT, OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT FILED BY TWILIO INC. AND INTELIQUENT, INC. [REC. DOC. 17]**

Defendant Premier Automotive, LLC ("Premier") moves to dismiss the First Amended Complaint filed by Plaintiff, Carlos Torres ("Torres"), and joins in the Motion to Dismiss First Amended Class Action Complaint, or, Alternatively, for a More Definite Statement, filed by its co-Defendants Twilio Inc. and Inteliquent, Inc. ("Co-Defendants' Motion to Dismiss") [Rec. Doc. 17]. This Court should dismiss Torres's claims against Premier because Torres gave his *express written consent* to Premier to contact him, by text or otherwise, about its products and services. Additionally, several arguments raised in the Co-Defendants' Motion to Dismiss apply with equal force to Premier. Specifically, Premier joins in Sections I (A) – (C) of the Memorandum submitted in support of the Co-Defendants' Motion to Dismiss [Rec. Doc. 17-1], which explain that Torres has failed to establish Article III standing in his First Amended Complaint [Rec. Doc. 5]. Premier also join in Sections II(B)(2) and II(B)(3), which explain, respectively, that Torres has failed sufficiently to allege use of an automatic telephone dialing systems ("ATDS") and lack of consent

1

required for the "text message call" Torres allegedly received. Finally, Premier join in Section III of the Memorandum and, alternatively, seeks a more definite statement of the claims and putative class claims set forth in the First Amended Complaint if this Court does not dismiss Torres's claims under Rule 12(b).[1]

## I. This Court should dismiss Torres's claims against Premier under 12(b)(6) because Torres expressly consented, in writing, to receive text messages from Premier.

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] The Telephone Consumer Protection Act ("TCPA") "makes it unlawful to make a call using an automatic telephone dialing system 'to any telephone number assigned to a ... cellular telephone service,' without the recipient's express consent."[3] To state a claim against Premier for which relief may be granted under the TCPA, Torres must show that Premier (1) made a call to a "telephone number assigned to a . . . cellular telephone service"; (2) using an ATDS; (3) without Torres's express consent.[4] Importantly, the TCPA does not provide a cause of action to a party who has given his express written consent to another to contact him by telephone, voicemail, or text for the purpose of advertising its products or services. Because Torres provided his express written consent to receive text messages from Premier, the Court should dismiss his TCPA claim.

"Persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the

---

[1] In Part II *infra*, Premier will address additional considerations for the arguments made by Twilio and Inteliquent that apply specifically to Premier.

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[3] *Reese v. Marketron Broad. Solutions, LLC*, No. CV 17-9772, 2018 WL 279633, at *2 (E.D. La. Jan. 3, 2018).

[4] *See* Rec. Doc. 17-1 at 11 (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

contrary."[5] This rule applies to cell phone numbers[6] and to text messages.[7] In 2012, Torres purchased a car from Toyota of New Orleans, and in connection with the purchase applied for credit from Toyota.[8] As part of the Credit Application Torres completed and signed, Torres provided his cell phone number.[9] Torres did not just provide his cell phone number to Premier; he gave Premier permission to "call [him], leave [him] a voice, prerecorded or artificial voice message or send [him] a text, email or other electronic message for any purpose related to my accounts with you, your products and services, or surveys or research (each a "Communication")."[10] Torres even consented to receiving "a Communication using an automated dialing machine."[11]

Torres does not specifically reference the Credit Application he provided to Premier in his First Amended Complaint. Nevertheless, this Court may consider that document in deciding Premier's Motion to Dismiss because it is embraced in the First Amended Complaint.[12] Torres alleges that he

> did not provide prior express written consent to receive any text message calls from Defendants as there was no written agreement from Defendants that included a signature from Plaintiff, clear and conspicuous authorization for Defendants to

---

[5] *Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52, 54 (2d Cir. 2018), as amended (Jan. 9, 2018) (quoting *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8768–69, ¶ 31 (1992)).

[6] *Id.* (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 ¶ 9 (2008)).

[7] *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02992-CLS, 2012 WL 551103957, at *3 (citing *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003)).

[8] Toyota of New Orleans is a trade name of Premier Automotive, L.L.C.

[9] Declaration of Troy Duhon, a copy of which is attached to this Memorandum as Exhibit A, at Ex. 1 (Credit Application, p.1).

[10] Declaration of Troy Duhon, a copy of which is attached to this Memorandum as Exhibit A, at Ex. 1 (Credit Application, p.2).

[11]*Id.*

[12] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

deliver advertising messages via autodialed calls, or the telephone number to which Plaintiff authorized messages or advertising messages to be delivered.[13]

The Credit Application is exactly the written agreement that Torres's conclusory allegations in the First Amended Complaint assert does not exist, including (1) a signature from Torres, (2) conspicuous authorization to deliver advertising messages via autodialed calls, and (3) the telephone number to which Torres authorized messages to be delivered.

In *Zean v. Fairview Health Services*, the United States Court of Appeal for the Eight Circuit upheld a district court's consideration of documents similar to the Credit Agreement that were not expressly referenced in a plaintiff's complaint alleging similar TCPA violations.[14] The plaintiff in *Zean* "alleged in conclusory fashion" that the defendant, Fairview Health Services, had not obtained "prior express consent" to contact the plaintiff when he purchased a medical device.[15] Fairview attached a document signed by the plaintiff to its motion to dismiss under 12(b)(6) that contained the plaintiff's signature and the following text:

> **Communication:** I understand Fairview may need to contact me in regard to my services and accounts. I give permission for Fairview and its approved agents to contact me by phone (including my cell phone). This may include the use of auto-dialers or pre-recorded messages.[16]

The Eighth Circuit held that the district court properly considered the exhibit because it "refute[d] th[e] conclusory allegation" that Fairview did not obtain the plaintiff's consent.[17] Similarly, here, the Credit Application refutes Torres's conclusory allegation that he did not provide prior express

---

[13] Rec. Doc. 5 at ¶ 34.

[14] 858 F.3d 520, 528 (8th Cir. 2017).

[15] *Id.* at 527.

[16] *Id.* at 524.

[17] *Id.* at 527.

written consent to Premier to contact. This Court should therefore consider the Credit Application and dismiss Torres's First Amended Complaint for failing to state an essential prong of a TCPA claim.[18]

## II. Joinder to Twilio and Inteliquent's Motion to Dismiss

### a. Joinder to Motion to Dismiss under 12(b)(6)

In addition, this Court should dismiss Torres's claims against Premier for several of the reasons set forth in the Co-Defendants' Motion to Dismiss. Specifically, Torres has failed to allege sufficiently that an ATDS was used to contact him and that consent was required (although it was obtained) by failing to state the content of the message he allegedly received.[19] Torres also lacks standing to sue Premier.

#### i. The First Amended Complaint is devoid of factual allegations that Premier used an ATDS.

No violation of the TCPA can occur without use of an "automatic telephone dialing system or an artificial or prerecorded voice."[20] Because the "call" at issue here is a text message, a violation of the TCPA can only have occurred if an ATDS was used. Torres generally alleges that the "nature of the text message calls" purportedly sent by Defendants "indicates that [they] used an automatic telephone dialing system" and, in support of this statement, simply provides the statutory definition of an ATDS.[21] Torres does not allege any specific facts explaining how the

---

[18] Alternatively, this Court should convert Premier's motion to a motion for summary judgment and dismiss Torres's claims under Rule 56. *See* FED. R. CIV. PROC. 12(d); *In re Katrina Breaches Consol. Litig.*, Civil Action No. 05–4182, 2010 WL 345894 (E.D. La. Jan. 21, 2010).

[19] Premier joins in Section III of the Co-Defendants' Motion to Dismiss in the event the Court does not dismiss, with prejudice, Plaintiffs' First Amended Complaint.

[20] 47 U.S.C. § 227(b)(1)(A).

[21] Rec. Doc. 5 at ¶ 18.

nature of the text message indicates that an ATDS was used – and, in fact, Torres does not allege any facts about the substance of the text other than to state: "The sender is identified in the text message call at issue as 'Troy Duhon from Toyota of New Orleans.'"[22] Torres pleads that, "[u]pon information and belief, Troy Duhon did not personally initiate the call at issue."[23] These bare, conclusory allegations are insufficient to show that an ATDS was used so as to survive a motion to dismiss.[24]

Mere recitation of the factual elements of a cause of action in a conclusory fashion is "insufficient to plausibly state a claim for relief." As Twilio and Inteliquent explain in their Memorandum, a plaintiff's mere allegation that the defendant used an ATDS is insufficient for the court to "reasonably infer . . . that [the defendant] randomly generated [the plaintiff's] cellular and home phone numbers with an automatic telephone dialing system."[25] Moreover, the fact that Torres gave his cell phone number to Premier suggests that the number was not, in fact, generated randomly by an ATDS. Torres failed to allege sufficient facts to show an ATDS was used by any Defendant, including Premier. Torres fails therefore to state a claim against Premier under the TCPA because he has not alleged sufficient facts to show an essential element of a TCPA claim is met.

---

[22] Rec. Doc. 5 at ¶ 26.

[23] Rec. Doc. 5 at ¶ 27.

[24] *See* Rec. Doc. 17-1 at 17 (citing *Creative Choice Home, Inc. v. Historic Restoration, Inc.*, No. CIV.A. 99-1569, 1999 WL 1009810, at *1 (E.D. La. Nov. 5, 1999)).

[25] *See* Rec. Doc. 17-1 at 17 (citing *Saragusa v. Countrywide*, Civ. A. No. 14-2717, 2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016)).

### ii. Torres fails to allege that consent was required.

As noted above, Torres alleges no facts in the First Amended Complaint regarding the content of the text message at issue other than the statement that the sender "is identified as . . . 'Troy Duhon from Toyota of New Orleans.'"[26] As Twilio and Inteliquent explain in their Memorandum, pursuant to guidance from the Federal Communication Commission ("FCC"), the content of the text message allegedly received is necessary to determine whether the consent that Torres incorrectly alleges was not given was even required.[27]

### b. Like Torres's Claims Against Twilio and Inteliquent, Torres's Claims Against Premier Should Be Dismissed for Lack of Standing.

As set forth in Twilio and Inteliquent's Memorandum, to establish Article III standing, Torres is required to show that (1) he "suffered an 'injury-in-fact,' which is an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent'"; (2) his injury is "'fairly traceable' to the challenged conduct" of Premier; and (3) it is "likely that [his] injury will be redressed by a favorable decision."[28] The only "Fact[] Specific to Plaintiff Torres" that explains any supposed harm to Torres is the allegation that his "right to privacy" was "adversely affected" by "Defendants' intrusive text message."[29] This alleged injury does not meet any of the requirements for Article III standing.

---

[26] Rec. Doc. 5 at ¶ 26.

[27] Rec. Doc. 17-1 at 17-18 (citing various statements of the FCC regarding exempted communications).

[28] Rec. Doc. 17-1 at 6 (quoting *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 3598297, at *2 (E.D. La. July 5, 2016)).

[29] Rec. Doc. 5 at ¶ 35.

### i. Torres has not alleged a concrete and particularized injury caused by Premier.

As Twilio and Inteliquent explain, Torres has failed to allege a concrete injury or one that "actually exists, meaning it is real and not abstract."[30] Instead, Torres has pleaded only a "bare assurance" that his right to privacy was adversely affected with no specific allegations explaining how that right was allegedly adversely affected.[31] Torres's alleged injury is too abstract to meet the injury in fact requirement for Article III standing.

Further, to the extent Torres relies generally on an alleged harm to "consumers" in his First Amended Complaint, that alleged harm is not a particularized injury for the purposes of Article III standing. A particularized injury "affect[s] the plaintiff in a personal and individual way."[32] Therefore, as explained in Twilio and Inteliquent's Memorandum, Torres's allegations that "Defendants caused consumers actual harm" and "consumers frequently have to pay their wireless providers for the receipt of such unsolicited text message calls" are insufficient to establish Article II standing because there is no allegation that Torres or any other particular putative class member has personally received similar text messages and suffered these harms.[33]

Torres's lack of Article III standing due to his failure to establish a concrete and particularized injury applies equally to his claims against all Defendants because Torres directs his generalized allegation of harm to all Defendants. Torres's First Amended Complaint should be dismissed as to all Defendants, including Premier, because Torres has failed to meet his burden to show the injury-in-fact required for Article III standing.

---

[30] Rec. Doc. 17-1 at 7 (quoting *Sartin*, 2016 WL 3598297, at *2).

[31] *See Sartin*, 2016 WL 3598297, at *2.

[32] *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___; 136 S. Ct. 1540, 1548 (2016).

[33] *See* Rec. Doc. 5 at ¶¶ 6, 22.

> **ii. Torres's alleged injury is not fairly traceable to a violation of the TCPA by Premier.**

Torres also fails to allege an injury that is fairly traceable to any violation of the TCPA by Premier. Torres does not allege that the harm he suffered would not have occurred in the absence of a TCPA violation. Instead, Torres merely alleges that an "intrusive text message" adversely affected his right to privacy. Because Torres fails to allege that this harm would not have occurred if Premier had "manually dialed his number, which would not have violated the TCPA," Torres fails to allege an injury in fact that is traceable to a violation of the TCPA by Premier, and, therefore, he has no Article III standing.[34]

> **iii. Torres's alleged injury is not capable of being redressed by a favorable judicial decision.**

Torres seeks an order awarding "all damages available under the TCPA, including $500.00 per violation and up to $1500.00 per violation, if Defendants willfully violated the TCPA"; an order declaring that Defendants' actions violate the TCPA; a declaratory judgment that Defendants' telephone calling equipment constitutes an ATDS as defined by the TCPA; disgorgement; an injunction requiring Defendants to cease "unsolicited text message activities'" and an award of costs.[35] As Twilio and Inteliquent explain, however, because Torres has not alleged a cognizable injury, "there would be nothing to remedy" if this relief is granted.[36] Consequently, Torres's allegations in his First Amended Complaint do not satisfy the requirements of Article III standing and should be dismissed.

---

[34] *See Ewing v. SQM US, Inc.* 211 F. Supp. 1289, 1293 (S.D. Cal. 2016); *see also* Rec. Doc. 17-1 at 10.

[35] Rec. Doc. 5 at 11-12.

[36] Rec. Doc. 17-1 at 11.

**III.    Conclusion**

Torres fails to state a claim against Premier under the TCPA because Torres gave his express written consent to Premier to contact him.  Further, as explained by Twilio and Inteliquent (in whose Co-Defendants' Motion to Dismiss, Premier joins), Torres lacks standing to bring his claim because he has failed to allege a concrete and particularized injury that can be redressed by a favorable judicial decision.  Accordingly, the Court should dismiss Torres's claims against Premier in the First Amended Complaint with prejudice.

Respectfully submitted,

  /s/ *James M. Garner*
JAMES M. GARNER (# 19589), T.A.
JOSHUA S. FORCE (# 21975)
MATTHEW M. COMAN (# 23613)
REBEKKA C. VEITH (# 36062)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana  70112-4046
Telephone:  (504) 299-2100
Facsimile:  (504) 299-2300
E-Mail:    jgarner@shergarner.com
           jforce@shergarner.com
           mcoman@shergarner.com
           rveith@shergarner.com

**COUNSEL FOR DEFENDANT PREMIER AUTOMOTIVE, LLC**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 31, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record who have registered to receive electronic service.

                                        /s/ *James M. Garner*
                                        JAMES M. GARNER